UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FATEMA AKTER**,<br><br>          Plaintiff,<br><br>          v.<br><br>**NATHAN FLOOK**, *in his official capacity as the U.S. Consul General in Dhaka, Bangladesh*,<br><br>          Defendant. | Case No. 24-cv-146 (CRC) |

## MEMORANDUM OPINION

In July 2020, Fatema Akter, a Bangladeshi citizen, applied for an immigrant visa to enter the United States. After the embassy deemed her application complete in February 2021, the next step was for Akter to complete an interview. Four years later, however, the government still has not scheduled an interview or decided Akter's application. Akter sued the U.S. Consul General in Bangladesh, alleging that the government's failure to act violates the Administrative Procedure Act. While the Court sympathizes with Akter and understands her frustration, it must dismiss her case for failure to state a plausible claim for unreasonable delay.

### I. Background

The Court draws the following background from the allegations in the Amended Complaint ("Compl.").

Fatema Akter is a resident and citizen of Bangladesh. Compl. ¶ 3. She is married to a lawful U.S. permanent resident. See id. ¶ 7. In July 2020, Akter applied for an immigrant visa at the U.S. Embassy in Bangladesh. Id. ¶ 8. Her application was deemed complete in February 2021 and presented to the Consul General in March. Id. ¶¶ 9–10.

According to State Department procedures, Akter's next step after completing her application is to complete an interview with embassy staff. See Mot. Dismiss ("Mot.") at 2–3. That interview, however, has not been scheduled, nor has the U.S. government otherwise acted on her application. Compl. ¶ 11; Mot. Dismiss at 2–3.

In January 2024, Akter sued the U.S. Consul General in Bangladesh under the Mandamus Act and the Administrative Procedure Act ("APA"), seeking an order from this Court directing the embassy to adjudicate her application. Akter claims that the APA requires the embassy to adjudicate her visa application within a reasonable time and that her application has been pending for too long—about four years as of this opinion, and about three years at the time Akter sued. Flook has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). Mot. at 1.

## II. Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true[] and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Giliana v. Blinken, 596 F. Supp. 3d 13, 17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint nor accept a plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). But on a 12(b)(6) challenge, the defendant must demonstrate that the plaintiff has failed to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

**III. Analysis**

The Court will begin with jurisdiction before turning to whether Akter has stated a claim for unreasonable delay.

   A. <u>Jurisdiction</u>

The Court has jurisdiction over this case because Akter's unreasonable-delay claim arises under federal law, <u>see</u> 28 U.S.C. § 1331, and she has standing to bring it.  For reasons discussed in many prior cases in this district, a plaintiff alleging that the government is taking too long to process her visa application has suffered a concrete injury that is traceable to the government and can be redressed by an order to process her application.  See <u>Khan v. Blome</u>, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022) (collecting cases).

Although the government styles its motion as a motion to dismiss under Rules 12(b)(1) and 12(b)(6), it does not make any jurisdictional arguments in its motion.  It argues that (1) "Plaintiff's claim fail[s] because there is no discrete agency action that a consular officer is required to take," Mot. at 6 (capitalization modified), and (2) "the complaint fails to state a plausible claim of unreasonable delay," <u>id.</u> at 12 (capitalization modified).  Neither of those arguments go to the Court's jurisdiction; both are arguments on the merits.  See <u>Karimova v. Abate</u>, No. 23-5178, 2024 WL 3517852, at *1, 3 (D.C. Cir. July 24, 2024) (holding that the court had jurisdiction even though plaintiff had not adequately alleged that the consular officer had a duty to act).  The Court will therefore address those issues as part of its analysis of whether Akter has stated a claim for unreasonable delay.

   B. <u>Failure to State a Claim</u>

The Court must dismiss this case because Akter has failed to state a plausible claim for unreasonable delay.

As a threshold matter, the government argues that Akter has failed to identify a nondiscretionary duty to adjudicate Akter's application. Mot. at 6–11; see Norton v. S. Utah Wilderness All., 542 U.S. 55, 61 (2004) (Under the APA, "federal courts may order agencies to act only where the agency fails to carry out a mandatory, nondiscretionary duty."). The Court will not decide this issue because it finds that Akter has failed to state a plausible claim for unreasonable delay even if the agency has a mandatory duty to act on her application.[1]

To evaluate whether the delay in this case is unreasonable, the Court applies the familiar six-factor test established by Telecommunications Research & Action Center v. Federal Communications Commission ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984). Under the TRAC test, courts must balance the following considerations:

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[1] The D.C. Circuit's recent decision in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), does not control here for two reasons. First, that decision is unpublished and therefore not binding. Second, in that case, the plaintiff's application was denied and then funneled into a years-long period of "administrative processing" while the government reconsidered it. Id. at *2. The Circuit thus held that nothing in the APA, standing alone, required the government to re-decide Karimova's application after "the consular officer ha[d] already acted on her application." Id. at *4–5. Here, by contrast, Akter has not received even an initial decision on her application. And Karimova acknowledged the possibility that the APA could impose a mandatory, nondiscretionary duty on the government to adjudicate a visa application in the first instance. See id. at *4 (noting that the APA "could have entitled [Karimova] to the official refusal decision she already received"). Also, because Akter has not received any decision on her application, the doctrine of consular nonreviewability does not apply either. See Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) ("Consular nonreviewability shields a consular official's *decision* to issue or withhold a visa from judicial review[.]" (emphasis added)).

  (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

  (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

  (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed'."

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80). Applying the TRAC factors here, the Court determines that the complaint does not plausibly allege an unreasonable delay. Factors one and four favor the government, factor six is neutral, and factors two, three, and five, while favoring Akter, do not overcome the others.

    a. TRAC Factors One and Two

  The Court begins with factors one and two: "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable." Giliana, 596 F. Supp. 3d at 20. The first factor is "most important" to the TRAC analysis, In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008), though the two are "typically considered together," Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

  To begin, the government is following a rule of reason. As it explains, it is using a first-in, first-out approach. See Mot. at 18 (citing 9 FAM 504.4-6a). Courts have long recognized that such an approach is reasonable. See, e.g., Da Costa v. Immigr. Inv. Prog. Off., 80 F.4th 330, 341 (D.C. Cir. 2023); L'Association des Americains Accidentels v. Dep't of State, 633 F. Supp. 3d 74, 82–83 (D.D.C. 2022).

  Akter has not plausibly alleged that the government has deviated from that reasonable approach. She alleges "[u]pon information and belief" that the government is not following a first-in, first-out approach and is acting on applications filed after Akter's. Compl. ¶¶ 15–17.

5

Those allegations are too cursory to survive a motion to dismiss. The D.C. Circuit has held that one-off incidents that may appear to violate a first-in, first-out policy for visa processing are not enough to "raise[] a reasonable inference that [the government] currently is following a processing system other than its official policy." Da Costa, 80 F.4th at 342. Here, the only example Akter musters as support for her allegation is an unnamed applicant who was "documentarily qualified for an immediate relative immigrant visa" after Akter but already received his or her visa. Compl. ¶ 16. That allegation fails to provide enough specifics to establish that the other applicant is similarly situated to Akter, such that a factfinder could plausibly infer that the other applicant jumped the queue ahead of Akter. It is entirely possible, for instance, that the other applicant was applying for a different type of visa and was therefore on a different track from Akter. See Iqbal, 556 U.S. at 682 (explaining that whether a claim is plausible depends in part on whether there is an "obvious alternative explanation"). Akter also concedes in her opposition to the government's motion that she has "no evidence regarding Defendant's actions at all," Opp'n at 7, so the Court has no idea what "information and belief" supports Akter's allegations. Without more specifics, Akter has not plausibly alleged that the government is not following its stated first-in, first-out approach.

Next, the Court's analysis of the second TRAC factor is squarely controlled by Da Costa v. Immigration Investor Program Office, 80 F.4th 330 (D.C. Cir. 2023). In that case, the Da Costas' visa applications had been pending for four-and-a-half years. Id. at 342. The plaintiffs sued over the delay and pointed to 8 U.S.C. § 1571(b), in which Congress expressed its "sense" that processing of visa applications "should be completed not later than 180 days after the initial filing of the application[.]" The D.C. Circuit, however, held that Section 1571(b) "is insufficient to set a deadline" for visa adjudications because it is merely an "aspirational statement" by

6

Congress. Id. at 344. And while Congress's hopes are not irrelevant, the Circuit went on to hold that the second TRAC factor only tipped "somewhat" in the Da Costas' favor because a four-and-a-half-year delay is not sufficiently disproportionate to Congress's 180-day aspiration. Id.

This case is on all fours with Da Costa. Akter's application has been pending for just over four years. That is a long time, but not as long as the Da Costas waited. And like the Da Costas, Akter also relies on Section 1571(b) to argue that her application has been unreasonably delayed. Opp'n at 5. She identifies no other yardstick by which the Court can measure the length of delay. See id. Under Da Costa, then, the Court must find that TRAC factor two at most "somewhat" favors Akter.

Akter argues that Afghan and Iraqi Allies v. Blinken, 103 F.4th 807 (D.C. Cir. 2024), changed the legal landscape and that the Court should not look to cases decided before it. See Akter Not. Supp. Auth. at 1 [ECF 13]. But that case applied Da Costa and did not purport to overturn it. Afghan & Iraqi Allies, 103 F.4th at 817; see also LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (one three-judge panel cannot overturn another). Accordingly, the Court remains bound by Da Costa and its holding that, even in light of Section 1571(b), a four-and-a-half-year delay on a visa application is not *per se* unreasonable. That outcome is consistent with decisions that "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Sarlak, 2020 WL 3082018, at *6 (collecting cases).

To sum up, the Court finds that the first (and most important) TRAC factor favors the government. The second factor only somewhat favors Akter.

b. TRAC Factors Three and Five

TRAC factors three and five—the delay's impact on "human health and welfare" and the "interests prejudiced by delay"—also go together. TRAC, 750 F.2d at 80. As to these factors, Akter has the upper hand. Her husband lives in the United States and was granted asylum here based on a well-founded fear of persecution in Bangladesh. Compl. ¶ 30. She also claims that she faces a risk of similar persecution in Bangladesh based on her association with her husband. Id. The distress caused by living apart from her husband and the risks she faces tilt these factors in her favor.

c. TRAC Factor Four

The fourth TRAC factor favors the government. An order putting Akter's application "at the head of the queue," as she requests, would "move[] all others back one space[,] and produce[] no net gain." See In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991); see also Mot. Dismiss at 19–21. This factor is significant, given that the D.C. Circuit has "refused to grant relief" in these circumstances, "even [where] all the other factors considered in TRAC favored it[.]" Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Furthermore, where, as here, "[t]he agency is in a unique—and authoritative— position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way," there is "no basis for reordering agency priorities." In re Barr Lab'ys, 930 F.2d at 76; see also Karimova, 2024 WL 3517852, at *4 ("[C]onsular officers have broad discretion when adjudicating visa applications."); Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[D]eference must be given to the State Department's priority-setting and resource-allocation decisions.") (collecting cases).

        d.   TRAC Factor Six

The sixth TRAC factor is neutral, given that Akter does allege any bad faith in her complaint and "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." TRAC, 750 F.2d at 80 (citation omitted) (quotation marks omitted).

\* \* \*

Taking each TRAC factor into consideration, the Court finds that the complaint does not plausibly allege an unreasonable delay. The Court is sympathetic to the difficulties faced by Akter and her husband as a result of the long and largely unexplained delay. It also acknowledges that three of the factors weigh in her favor. Yet "the Court is also mindful that 'many others' face similarly difficult circumstances as they await adjudication of their visa applications." Mohammad v. Blinken, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quoting Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)). As a result, these considerations "are not enough to overcome the other factors that weigh strongly in the Government's favor," Palakuru, 521 F. Supp. at 53, including factor one, which is the most important factor in the TRAC analysis. The Court therefore must dismiss this case.

## IV. Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: February 28, 2025